# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONINO BUSALACCHI, ANIS BEN ADJ YAHIA, JOE SYRIANI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARIZONA PUBLIC SERVICE COMPANY, an Arizona Corporation; PINNACLE WEST CAPITAL CORPORATION, an Arizona Corporation; SAN DIEGO GAS & ELECTRIC COMPANY, a California Corporation; and ,<br><br>Defendants. | CASE NO. 12-CV-00298-H-RBB<br><br>**ORDER**:<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT SDG&E'S MOTION TO DISMISS NEGLIGENCE CAUSE OF ACTION;**<br><br>**(2) DENYING DEFENDANT SDG&E'S MOTION TO DISMISS UCL CAUSE OF ACTION;**<br><br>**(3) GRANTING DEFENDANT SDG&E'S MOTION TO DISMISS PUNITIVE DAMAGES REQUEST;**<br><br>**(5) DENYING DEFENDANT SDG&E'S MOTION TO DISMISS REQUEST FOR INJUNCTIVE RELIEF WITHOUT PREJUDICE;**<br><br>**AND**<br><br>**(4) GRANTING DEFENDANTS APS AND PINNACLE'S MOTION TO DISMISS NUISANCE CAUSE OF ACTION** |

On June 18, 2012, Defendants Arizona Public Service Company ("APS") and Pinnacle West Capital Corporation ("Pinnacle") filed a motion to dismiss Plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 23.) On July 16, 2012, Plaintiffs Anis Ben Adj Yahia, Antonino Busalacchi, and Joe Syriani filed their opposition to Defendants APS and Pinnacle's motion to dismiss. (Doc. No. 26.) On July 23, 2012, Defendants APS and Pinnacle filed their reply in support of their motion to dismiss. (Doc. No. 27.)

On June 21, 2012, Defendant San Diego Gas & Electric ("SDG&E") also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 24.) On July 16, 2012, Plaintiffs filed their opposition to Defendant SDG&E's motion. (Doc. No. 26.) On July 23, 2012, Defendant SDG&E filed its reply. (Doc. No. 28.) The Court held a hearing on the matter on July 30, 2012.

The Court, pursuant to Local Rule 7.1(d), determines the matters are appropriate for resolution without oral argument, submits the motion on the parties' papers, and vacates the scheduled hearing. For the following reasons, the Court grants Defendants APS and Pinnacle's motion to dismiss Plaintiffs' nuisance claim; grants in part and denies in part Defendant SDG&E's motion to dismiss Plaintiffs' negligence claim; denies Defendant SDG&E's motion to dismiss Plaintiffs' UCL claim; grants Defendant SDG&E's motion to dismiss Plaintiffs' request for punitive damages as legally insufficient; and grants Defendant SDG&E's motion to dismiss Plaintiffs' request for injunctive relief without prejudice.

**Background**

Plaintiffs' class-action complaint arises from a large-scale power failure in San Diego, Imperial, Orange, and Riverside Counties that occurred on September 8, 2011. (Doc. No. 1.) According to Plaintiffs, 1.4 million SDG&E customers were without power for up to twelve hours. (Doc. No. 1.) Because of the outage, Plaintiffs allege that they were forced to discard perishable food that spoiled when their refrigerators lost power. (Doc. No. 1.) According to Plaintiffs, the outage resulted from an APS employee's negligence in conducting a procedure near Yuma, Arizona. (Doc. No. 1.)

On March 21, 2012, the Court granted Defendant SDG&E's motion to stay the case pending resolution of the issues by the U.S. Federal Energy Regulatory Commission ("FERC") and the California Public Utilities Commission ("PUC"). (Doc. No. 21.) On May 1, 2102, the FERC Report issued and provided FERC's key findings and recommendations. (Doc. No. 24-3, Ex. 1.)

Plaintiffs' complaint alleges negligence and a violation of California Business & Professions Code section 17200, et seq. against Defendant SDG&E. (Doc. No. 22.) Plaintiffs also allege nuisance against Defendants APS and Pinnacle. (Id.)

## Discussion

### I. Defendant SDG&E's Request for Judicial Notice

In general, the scope of review on a motion to dismiss for failure to state a claim is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may also consider additional documents under the "incorporation by reference" doctrine as long as "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

Here, Defendant SDG&E submits for judicial notice the FERC Report; SDG&E's Tariff Rules 3, 4, and 14; FERC Order No. 752, and PUC Opinion D.12-04-024. (Doc. No. 24-3.) Plaintiffs and Defendants APS and Pinnacle do not object to judicial notice of these documents. (Doc. Nos. 23, 25.) Accordingly, the Court takes judicial notice of Defendant SDG&E's exhibits.

1  **II.     Motion to Dismiss Pursuant to 12(b)(6): Legal Standards**

2       A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests
3  the legal sufficiency of the claims asserted in the complaint. Navarro v. Black, 250 F.3d 729,
4  732 (9th Cir. 2001). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a
5  short and plain statement of the claim showing that the pleader is entitled to relief." The
6  function of this pleading requirement is to "give the defendant fair notice of what the . . . claim
7  is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
8  (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
9  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement
10 to relief' requires more than labels and conclusions, and a formulaic recitation of the elements
11 of a cause of action will not do." Id. A complaint does not "suffice if it tenders 'naked
12 assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678
13 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a
14 right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Wright &
15 Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). "All allegations of
16 material fact are taken as true and construed in the light most favorable to plaintiff. However,
17 conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion
18 to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th
19 Cir. 1996); see also Twombly, 550 U.S. at 555.

20 **III.    SDG&E's Motion to Dismiss**

21      **A.     Negligence Claim Against SDG&E Customers**

22      The California Legislature has provided the California Public Utilities Commission
23 (PUC) with broad supervisory and regulatory powers. Waters v. Pac. Tel. Co., 12 Cal. 3d 1,
24 6 (1974). As a public utility, SDG&E is subject to and must obey all of the rules and orders
25 of the PUC. Cal. Const., art XII, § 6; Cal. Pub. Util. Code §§ 701-702. In accordance with
26 California law, SDG&E must file tariff rules with the PUC covering the terms and conditions,
27 including rates, classifications, and attendant liabilities, under which it renders service to the
28 public. Cal. Pub. Util. Code. § 489(a). "The tariff, with any limitations of liability specified

therein, is the document that governs the rights and liabilities between a public utility . . . and its customers." Pink Dot, Inc. v. Teleport Commc'ns Grp., 89 Cal. App. 4th 407, 410 (Ct. App. 2001); see also L.A. Cellular Tele. Co. v. Superior Court, 65 Cal. App. 4th 1013, 1017 (Ct. App. 1998). "A public utility's tariffs filed with the PUC have the force and effect of law." Dollar-A-Day Rent-A-Car Sys., Inc. v. Pac. Tel. & Tel. Co., 26 Cal. App. 3d 454, 457 (Ct. App. 1972); see also Dyke Water Co. v. Pub. Utils. Comm'n, 56 Cal. 2d. 105, 123 (1961). But see Pink Dot, Inc., 89 Cal. App. 4th at 419 ("No California case holds that the terms of a PUC tariff can insulate a public utility from its intentionally tortious conduct.").

Defendant SDG&E argues that Plaintiffs' cause of action for negligence is precluded by Tariff Rule 4(F). (Doc. Nos. 24, 28.) SDG&E Tariff Rule 4(F) provides:

> No party under contracts for electric service shall be assessed any special, punitive, consequential, incidental, or indirect damages, whether in contract or tort, for any actions or inactions arising from or related to such contract.

(Doc. No. 24, Ex. 3 at 162.) Defendant SDG&E also argues that SDG&E Tariff Rule 14 exonerates SDG&E of liability for events outside of its control. (Doc. No. 24.)

Limitations of liability, like that proposed by SDG&E's tariff, are generally disfavored. In Langley v. Pacific Gas & Electric Co., the California Supreme Court stated that an electricity company had a "duty to exercise reasonable care in operating its system to avoid unreasonable risks of harm tot he persons and property of its customers." Langley v. Pac. Gas & Elec. Co., 41 Cal. 2d 655, 660-61 (1953). Further, California Public Utility Code section 2106 provides liability for a public utility's wrongful conduct and an opportunity for customers to recover damages against utility companies. Cal. Pub. Util. Code. § 2106. The Court concludes that evaluating the interaction of a utility company's tariff with a negligence claim requires a case-by-case evaluation of the facts underlying the cause of action. Plaintiffs and Defendant SDG&E disagree on the application of the tariff to Plaintiffs' causes of action and potential damages recovery. (See Doc. Nos. 23, 25, 28.) Resolving their disagreement is better suited for summary judgment. Further, any argument by Defendant SDG&E that it is not liable because the events of the power outage were out of its control is better suited for summary judgment. Accordingly, the Court concludes that whether SDG&E's tariff provision

precludes a cause of action for negligence would be better evaluated after further development of the record and on a summary judgment motion. The Court denies Defendant SDG&E's motion to dismiss Plaintiffs' negligence cause of action on behalf of SDG&E customers.

### B. Negligence Action Against Non-Customers of SDG&E

Defendant SDG&E argues that Plaintiffs' negligence claim against SDG&E on behalf of non-SDG&E customers residing in Imperial, Orange, and Riverside Counties must be dismissed because Defendant SDG&E owes no duty to non-SDG&E customers. The Court agrees. As stated in the Court's March 21, 2012 order and with respect to Plaintiffs' nuisance action against Defendants APS an Pinnacle, a public utility company owes no duty to non-customers when an interruption of service occurs. Accord Maxim Integrated Prods., 1998 WL 865281, at *5-*6. To the contrary, an analogous federal district court case concluded that a California public utility company does not owe a duty to its non-customers when an interruption of service occurs. Id. Additionally, the parties have not cited any cases holding that a public utility owes a duty to non-customers. (See Doc. Nos. 23, 26, 24.) Accordingly, the Court grants Defendant SDG&E's motion to dismiss Plaintiff's negligence cause of action on behalf of non-SDG&E customers. (Doc. No. 24.)

### C. Violations of California Business & Professions Code Section 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200, et. seq. The statute is written in the disjunctive, meaning that conduct can be "fraudulent" or "unfair" even if it is not "unlawful." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 210–12 (1999).

#### 1. Unlawful

An act is unlawful if it violates an underlying state or federal statute or common law. Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 180. The UCL governs "'anti-competitive business practices as well as injuries to consumers, and has a major purpose 'the preservation of fair business competition.'" Id. (internal citations omitted). "By proscribing 'any unlawful' business practice, 'section 1700 'borrows' violations of other laws and treats them as unlawful

practices' that the unfair competition law makes independently available.'" Id. (internal citations omitted).

Defendant SDG&E argues that Plaintiffs' allegations that SDG&E violated reliability standards cannot support a UCL claim. (Doc. No. 24.) Plaintiffs allege that SDG&E engaged in unlawful and unfair conduct by "not developing, researching and implementing better operations and protection protocols" and by "not employing and failing to train employees who carry out proper procedures. (Doc. No. 22 ¶ 88.) Additionally, Plaintiffs allege that Defendant SDG&E violated numerous orders and reliability standards. (Id. ¶ 90.) Specifically, Plaintiffs allege that SDG&E "failed to maintain their system consistent with the [North America Electric Reliability Corporation ("NERC")] reliability standards, since their system suffered instability." (Id.) Further, Plaintiffs allege that SDG&E "violated FERC Order No. 693, because SDG&E failed to conduct the proper planning by failing to conduct studies for failure of a single element in their system." (Id. ¶ 91.) Plaintiffs allege, "The acts and practices of Defendant [are] also unlawful because they violate one or more of the following: Negligence . . . and Nuisance." (Id. ¶ 93.) Plaintiffs also allege that Defendant SDG&E's practices were unlawful because they were negligent. (Id. ¶ 93.)

To the extent that Plaintiffs' claim of unlawful conduct arises under a negligence theory, the Court, in accordance with California law, declines to extend the UCL prong of unlawful conduct to include a negligence action. See, e.g., Joe Hand Promotions, Inc. v. Alvarado, 1:10-cv-00907, 2011 WL 1544501, at *7 n.4 (E.D. Cal. April 21, 2011); Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010); Hartless v. Clorox Co., No. 06-CV-2705, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007).

Nevertheless, Plaintiffs also allege that Defendant SDG&E's conduct was unlawful because it violated FERC Order 693 and NERC reliability standards. (See Doc. No. 22.) Violations of federal regulations can support a UCL cause of action. See Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th 1463, 1482-84 (Ct. App. 2005). Here, Plaintiffs have sufficiently alleged that Defendant violated numerous regulatory guidelines—section 451 reliability standards—including but not limited to FERC Order 693. (Doc. No. 22 ¶ 693.)

Further, they allege sufficient facts supporting these violations. (Id.) To the extent that Defendant SDG&E argues that the same allegations support Plaintiffs' UCL claim as their negligence cause of action, the Court declines to conclude that the same set of facts cannot support various causes of action. Plaintiffs plead violations of federal regulations, not only negligent conduct. (See Doc. No. 22.) Accordingly, the Court concludes that Plaintiffs have sufficiently stated a claim for unlawful conduct under the UCL. See Cal. Bus. & Prof. Code §§ 17200, et seq.

**2.     Unfair**

California courts define an unfair business practice under the UCL as either a practice that undermines a legislatively declared policy or threatens competition, or a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007); see Cel-Tech, 20 Cal. 4th at 186-87; S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (Ct. App. 1999). Unfair behavior is that which is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1260 (Ct. App. 2006).

Plaintiffs allegations cannot withstand a motion to dismiss. Plaintiffs allege that SDG&E engaged in unlawful and unfair conduct by "not developing, researching and implementing better operations and protection protocols" and by "not employing and failing to train employees who carry out proper procedures. (Doc. No. 22 ¶ 88.) Plaintiffs further allege that SDG&E engaged in unfair competition because it "(1) did not adequately identify and study critical extern facilities; (2) did not adequately analyze potential contingency scenarios; (3) were based on inaccurate models and invalid system operating limits (SOLs); and (4) did not set up the protective . . . plan according to FERC/NERC guidelines." (Id. ¶ 89.) Additionally, Plaintiffs allege that "SDG&E operated the line and set the relays for the benefit of the Imperial Immigration District and Imperial Immigration District's customers and did not set for the benefit of SDG&E customers." (Id. ¶ 91.)

///

1	The Court concludes that Plaintiffs' complaint does not allege any intentional behavior that arises to the level of unfairness. (See Doc. No. 1.) The purpose of the UCL is to protect against unfair practices by a company against consumers. See Bardin, 136 Cal. App. 4th 1255; S. Bay, 72 Cal. App. 4th 861. Plaintiffs do not allege any intentional behavior that could be deemed unfair, immoral, unethical, or oppressive. See Bardin, 136 Cal. App. 4th at 1260. Namely, Plaintiffs do not allege any intentional conduct by Defendants APS and Pinnacle. (See Doc. No. 22.) At this time, the Court declines to extend the UCL unfair prong to include actions arising out of facts absent of intentional conduct. Accordingly, the Court concludes that Plaintiffs have failed to state a cause of action under the unfair prong of the UCL.

### D.  Plaintiffs' Request for Punitive Damages

In their request for relief, Plaintiffs request an award of punitive damages for Defendants' violations of the UCL. (Doc. No. 22.) Defendant SDG&E argues that punitive damages are not available under the UCL because Plaintiffs do not allege conduct that arises to the level required to award punitive damages. (Doc. No. 24.) The Court agrees.

Punitive damages are permitted in tort actions when there is "clear and convincing evidence that defendant has been guilty of oppression, fraud, or malice." Cal. Civil Code § 3294(a). "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard for the interests of others that his conduct may be called willful or wanton." Taylor v. Superior Court, 24 Cal. 3d 890, 894-95 (1979) (internal citations omitted).

Plaintiffs sufficiently allege violations of the UCL that arise from unlawful conduct. (Doc. No. 22 ¶ 91.) Nevertheless, in alleging this conduct, Plaintiffs do not allege that Defendant SDG&E's conduct was the result of malice, fraud, or oppression. (Id.) Although Plaintiffs' request for relief mentions Defendants' conspiracy and other fraudulent and deceitful conduct, the complaint contains no facts supporting these allegations. (See Doc. No. 22.) Furthermore, the Court notes that punitive damages are not an available remedy under the UCL. See Kor. Supply Co., 29 Cal. 4th at 1144. Whether styled as a motion to strike or a

1 motion to dismiss, the Court concludes that Plaintiffs' request for punitive damages is legally
2 insufficient. As a result, the Court grants Defendants' motion to dismiss the punitive damages
3 request. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 971, 974-75 (9th Cir. 2010)
4 (stating that Rule a 12(f) motion is not a proper means to dismiss unavailability of damages
5 but rather a 12(b)(6) would be more appropriate).

### E. Plaintiffs' Request for Injunctive Relief

Defendant SDG&E also argues that Plaintiffs' request for injunctive relief must be dismissed, contending that Plaintiffs' request is legally impermissible because it would interfere with PUC's regulation of communications between utilities and consumers. (Doc. No. 24.) Under California law, an action for damages against a public utility is barred when it would interfere, hinder, or second guess the decision of the governmental bodies that regulate the utilities or award of damages would impermissibly interfere with the PUC's broad regulatory policy on the subject matter. San Diego Gas & Elec. Co. v. Superior Court (Covalt), 13 Cal. 4th 893, 918, 920 (1996). Failure to defer to an agency's findings or regulatory policy can cause inconsistent results and undermine the agency's authority to regulate the field of its expertise. See id. at 918.

The Court concludes that evaluating whether injunctive relief would interfere with the PUC's regulatory policies and authority requires a case-by-case evaluation of the facts underlying the case. The parties dispute whether the Court may grant injunctive relief under the circumstance of the case. (Doc. No. 24 at 21-22; Doc. No. 25 at 15.) The Court concludes that whether injunctive relief is appropriate is a question better suited after a development of the record. Accordingly, the Court denies Defendant SDG&E's motion to dismiss Plaintiffs' request for injunctive relief without prejudice.

## II. Defendants APS and Pinnacle's Motion to Dismiss

### A. Nuisance Cause of Action Against APS and Pinnacle

California Civil Code section 3479 defines nuisance as "[a]nything which is injurious to health . . . so as to interfere with the comfortable enjoyment of life and property." Cal. Civil Code § 3479; see also Melton v. Boustred, 183 Cal. App. 4th 521, 542 (Ct. App. 2010). "A

nuisance may be a public nuisance, a private nuisance, or both." Newhall Land & Farming Co. v. Superior Court, 19 Cal. App. 4th 334, 341 (Ct. App. 1993). "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal. Cal. Civil Code § 3480. As the California Supreme Court explained, "public nuisances are offenses against or interferences with the exercise of rights common to the public." Melton, 183 Cal. App. 4th at 542 (internal quotation marks omitted) (internal citation omitted). "Every other nuisance is private." Newhall, 19 Cal. App. 4th at 341; see also Lussier v. San Lorenzo Valley Water Dist., 206 Cal. App. 3d 92, 100 (Ct. App. 1988) ("[A]n action for a private nuisance is designed to redress a substantial and unreasonable invasion of one's interest in the free use and enjoyment of one's property."). The elements of a cause of action for nuisance "include the existence of a duty and causation." Melton, 183 Cal. App. 4th at 542 (quoting In re Firearm Cases, 126 Cal. App. 4th 959, 988 (Ct. App. 2006)) (internal quotation marks omitted). "The conduct necessary to make an actor liable for either a public or private nuisance may consist of (a) an act; or (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest." In re Firearm, 126 Cal. App. 4th at 680 (quoting Restatement (second) of Torts § 824 (1965)).

Plaintiffs' complaint alleges a cause of action for nuisance against Defendants APS and Pinnacle arising out of private nuisance and public nuisance. (Doc. No. 22.) Plaintiffs allege that Defendants APS and Pinnacle caused blackouts through its acts and omissions constituting a nuisance. (Id.) Defendants APS and Pinnacle argue that Plaintiffs' nuisance cause of action fails because it is predicated on a negligence theory that cannot prevail under California law. (Doc. No. 23.) Plaintiffs argue that the nuisance cause of action against APS relies on entirely different facts than that of the negligence claim against SDG&E because of the change in control over the course of the outage. (Doc. No. 26.) The Court evaluates the nuisance claim.

///

///

### 1.     General Duty of a Public Utility

The general rule that each person owes a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care applies to public utilities.  Cal Civil Code § 1714; White v. S. Cal. Edison Co., 25 Cal. App. 4th 442, 447 (Cal. Ct. App. 1994). Specifically, California courts have held that a public utility generally has a duty to exercise reasonable care in the management of its personal and real property.  Langley v. Pac. Gas & Elec. Co., 41 Cal. 2d 655, 660-61 (Cal. 1953).  Further, a public utility company may be liable to those persons injured as a result of its breach of this duty.  See id. (holding that an electrical company had a duty to its customers  to act in a reasonable manner during a power failure).

Codifying a general duty of care, the California Legislature enacted California Public Utilities Code section 451, which states, "Every public utility shall furnish and maintain such adequate, efficient, just, and reasonable service, instrumentalities, equipment, and facilities . . . as are [necessary]  to promote the safety, health, comfort, and convenience of its patrons, employees, and the public."  Cal. Pub. Util. Code § 451.  Interpreting this statute, in Langley v. Pacific Gas & Electric Co., the California Supreme Court stated that an electricity company had a "duty to exercise reasonable care in operating its system to avoid unreasonable risks of harm to the persons and property of its customers."  Langley, 41 Cal. 2d at 661.  Therefore, Langley "established that when a public utility directly supplies a person or business with electricity, that person or business may sue in tort for the public utility's failure to meet its duty of care."  But see Maxim Integrated Prods. v. United States, C 97-4417, 1998 WL 865281, at *5 (N.D. Cal. 1998) (declining to "apply Langley for a broader proposition—i.e., that when any public utility supplies electricity to another public utility, the original supplier owes a duty to whomever ultimately uses that electricity").

### 2.     Exception to General Duty Rule of a Public Utility

California courts have created an exception to the general duty owed by public utilities. California courts apply the exception when power service is interrupted or when the public utility fails to provide service.  See White, 25 Cal. App. 4th at 448.  In White v. Southern California Edison Co., the California Court of Appeal stated, "In the absence of a contract

1  between the utility and the consumer expressly providing for the furnishing of a service for a
2  specific purpose, a public utility owes no duty to a person injured as a result of an interruption
3  of service or a failure to provide service." Id.  The White court cited Langley for the general
4  rule that a public utility has a general duty to exercise reasonable care in the management of
5  its personal and real property but nevertheless concluded that a public utility owes no duty to
6  its non-customers in the case of an interruption of service in the absence of a contract
7  "expressly providing for the furnishing of a service." Id. at 447-48.  In reaching its decision,
8  White relied on California Supreme Court cases Niehaus Bros. Co. v. Contra Costa Water Co.,
9  159 Cal. 305, 312-16 (Cal. 1911), and Town of Ukiah City v. Ukiah Water & Improvement
10 Co., 142 Cal. 173 (Cal. 1904), which originally created the judicial exception that a public
11 utility owes no duty to a non-customer for the interruption of a utility service. White, 25 Cal.
12 App. 4th at 448; see also Niehaus Bros. Co. v. Contra Costa Water Co., 159 Cal. 305, 312-16
13 (Cal. 1911); Town of Ukiah City v. Ukiah Water & Improvement Co., 142 Cal. 173 (Cal.
14 1904).

15        In examining cases from White to present, the Court concludes, like in its March 21,
16 2012 order, that no cases have concluded that a public utility company owes a duty to its non-
17 customers when an interruption of service occurs. Accord Maxim Integrated Prods., 1998 WL
18 865281, at *5-*6.  To the contrary, an analogous federal district court case concluded that a
19 California public utility company does not owe a duty to its non-customers when an
20 interruption of service occurs. Id.  Additionally, the parties have not cited any cases holding
21 that a public utility owes a duty to non-customers.  (See Doc. Nos. 23, 26, 24.)  Further, the
22 Court notes that the California Supreme Court in Langley did not overrule or abrogate Neihaus
23 or Ukiah, leaving the judicially created duty exception untouched.  See Langley, 41 Cal. 2d.
24 655.  Specifically, Langley limited California Public Utilities Code section 451's application
25 to a public utility's own customers, distinct from the public utility duty exception in Niehaus
26 and Ukiah.  Id. at 661.

27        Defendants APS and Pinnacle argue that Plaintiffs cannot maintain a nuisance action
28 against them because they do not owe a duty of care to Plaintiffs, as determined by the Court

in its March 21, 2012 order. (Doc. No. 23; see Doc. No. 21.) Defendants argue that because Defendants APS and Pinnacle do not owe a duty to Plaintiffs, any nuisance claim predicated on negligence must fail. (Doc. No. 23.) The Court agrees.

"In a case requiring a federal court to apply California law, the court 'must apply the law as it believes the California Supreme Court would apply it.'" Kairy v. SuperShuttle Int'l, 660 F.3d 1146, 1150 (9th Cir. 2011) (quoting Gravquick A/S v. Trimble Navigation Int'l, Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003). Because, as in White, Defendants APS and Pinnacle did not have a contract with Plaintiffs expressly providing for electrical service, the Court concludes that a California court would determine the duty exception for public utility companies applicable. Accordingly, the Court concludes that existing California law—one that the Court is bound to apply—provides that Defendants APS and Pinnacle owed no duty of care to Plaintiffs. Another federal district court agrees. See Maxim Integrated Prods., 1998 WL 865281, at *5-*6. Although APS and Pinnacle supplied electricity to SDG&E, which in turn supplied electricity to Plaintiffs, Plaintiffs have not pled that they were customers of APS and Pinnacle. (Doc. No. 22.) Similarly, APS and Pinnacle did not undertake to supply electricity to Plaintiffs.

To maintain a nuisance cause of action, Plaintiffs must plead the existence of a duty and causation. See In re Firearm, 126 Cal. App. 4th at 680. Here, Plaintiffs do not plead that Defendants APS and Pinnacle owed a duty to Plaintiffs. (Doc. No. 22.) Further, the Court concludes, consistent with its March 21, 2012 order, that Plaintiffs cannot plead that Defendants APS and Pinnacle owed a duty to Plaintiffs. (See Doc. No. 21.) Because duty is a required element of nuisance and Plaintiffs fail to sufficiently plead the element, the Court grants Defendants APS and Pinnacle's motion to dismiss Plaintiffs' cause of action for nuisance. (See Doc. Nos. 22, 23.)

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant SDG&E's motion to dismiss Plaintiffs' negligence cause of action. (Doc. No. 24.) The Court denies Defendant SDG&E's motion to dismiss Plaintiffs' cause of action under the UCL. (Id.)

1  The Court grants Defendant's motion to dismiss Plaintiffs' request for punitive damages as
2  legally insufficient.  (See Doc. No. 22.)  The Court denies Defendant SDG&E's motion to
3  dismiss Plaintiffs' request for injunctive relief without prejudice.  (Doc. No. 24.) The Court
4  grants Defendants APS & Pinnacle's motion to dismiss Plaintiffs' nuisance cause of action.
5  (Doc. No. 23.)  Furthermore, because FERC issued its report on May 1, 2012, automatically
6  lifting the Court's prior stay, the Court concludes that the status conference scheduled to
7  evaluate the case while stayed is moot.  (See Doc. No. 21.)  Accordingly, the Court vacates the
8  status conference set in the case for September 17, 2012.  (See Doc. No. 21.)

**IT IS SO ORDERED**.

DATED: July 27, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT