Michael J. Pérez, State Bar No. 151039
PEREZ & WILSON
750 B Street, Suite 3300
San Diego, California 92101
Telephone: 619.741.0282
Facsimile: 619.460.0437
perez@perezwilson.com

Attorneys for Defendant
SAN DIEGO GAS & ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO BUSALACCHI; JOE SYRIANI; and MONA NEHME, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ARIZONA PUBLIC SERVICE COMPANY an Arizona Corporation; PINNACLE WEST CAPITAL CORPORATION, an Arizona Corporation; SAN DIEGO GAS & ELECTRIC COMPANY, a California Corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 3:12-cv-00298-H-KSC<br><br>Judge:  Hon. Marilyn L. Huff<br><br>**SAN DIEGO GAS & ELECTRIC COMPANY'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE REMANDED TO STATE COURT**<br><br>Complaint Filed:  May 31, 2012<br>Trial Date:           None Set<br><br>Courtroom:           15A |

Defendant San Diego Gas & Electric Company ("SDG&E") respectfully submits this brief in response to the Court's August 15, 2013 Order to Show Cause Why Case Should Not be Remanded to State Court (Dkt. No. 74) (the "OSC") and its subsequent scheduling order related thereto (Dkt. No. 76).

## I.   INTRODUCTION

SDG&E removed this action based on the Court's subject matter jurisdiction arising from federal questions presented by plaintiffs' ("Plaintiffs"[1]) reliance on alleged violations of Federal Energy Regulatory Commission ("FERC") and North America Electric Reliability Corporation ("NERC") standards and orders as the basis for their claims. (Dkt. No. 9.) SDG&E's removal was proper in light of Congress' grant of exclusive jurisdiction over such matters to the U.S. District Courts under the Federal Power Act (16 U.S.C. § 791a *et seq.*)(the "FPA"). The Court's OSC references the "savings provision" set forth in 16 U.S.C. §824o(i)(3) as providing for concurrent state court jurisdiction over Plaintiffs' claims. However, for the reasons set forth below, that provision does not apply to divest this Court of jurisdiction.

In addition, former defendants Arizona Public Service Company and Pinnacle West Capital Corporation (collectively, "Pinnacle Defendants") also removed the action based on the Class Action Fairness Act ("CAFA"). Under that statute, as long as the Pinnacle Defendants' removal was proper in the first instance, which it was, the Court retains subject matter jurisdiction even though the Pinnacle Defendants have since been dismissed from the action.

For these reasons, and as set forth more fully below, the Court retains subject matter jurisdiction over Plaintiffs' Second Amended Complaint ("SAC") and the case should not be remanded to state court.

///

///

---

[1] All references herein to "Plaintiffs" are to plaintiffs Antonio Busalacchi, Joe Syriani and Mona Nehme.

## II. LEGAL ANALYSIS[2]

### A. The Court Has Federal Question Jurisdiction

SDG&E removed this case pursuant to 28 U.S.C. § 1441. Removal was proper because the federal courts have original jurisdiction of this action under 28 U.S.C. § 1331 and statutory jurisdiction under the FPA. Specifically, federal statutory jurisdiction over the interstate transmission of electrical energy emanates from the FPA, which "declare[s] that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest." 16 U.S.C. § 824(a). The FPA applies to "the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce ... [and] over all facilities for such transmission or sale of electrical energy." 16 U.S.C. § 824(b)(1). It gives FERC "jurisdiction over all facilities for such transmission or sale of electric energy ...." 16 U.S.C. § 824(b)(1). It also provides that U.S. District Courts "have exclusive jurisdiction of … all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p.

Congress amended the FPA through the Energy Policy Act of 2005 ("EPAct"), which added federal standards to ensure that the nation's interconnected electrical grid is reliable, adequate and secure. Specifically, through the EPAct, Congress amended the FPA to grant FERC jurisdiction over "all users, owners and operators of the bulk-power system . . . for purposes of approving reliability standards under this section and enforcing compliance with this section." *See* EPAct section 215(b)(1), codified at 16 U.S.C. § 824o(b)(1). SDG&E qualifies as "users, owners and operators." *See* 16 U.S.C. § 824.

///

---

[2] Rather than provide the Court with another summary of the procedural background regarding this case, SDG&E refers the Court to the summaries provided by Plaintiffs and APS in their briefs (Dkt. Nos. 78, 83) and incorporates those summaries by this reference as if they are set forth fully herein.

Congress also specifically tasked the Electric Reliability Organization (later established as NERC) with the duty of establishing and enforcing reliability standards for the bulk-power system. *See* EPAct Section 215(a)(2), codified at 16 U.S.C. § 824o(a)(2). These "reliability standards" are "the planning and operating rules that electric utilities follow to ensure the most reliable system possible." Once NERC proposes a reliability standard, it is "reviewed and approved by the NERC Board of Trustees, which then submits the standards to [FERC] and Canadian provincial regulators for approval." *See, e.g.*, North American Electric Reliability Corp., Facilities Design, Connections, and Maintenance Reliability Standard FAC-013-2, 137 FERC ¶ 61,131 (2011); North American Electric Reliability Corp., Facility Ratings Reliability Standard FAC-008-3, 137 FERC ¶ 61,123 (2011).

If approved by FERC, the reliability standard becomes "legally binding on all owners, operators and users of the bulk power system." FERC requires utilities to incorporate these standards into their FERC tariffs (*see* Preventing Undue Discrimination and Preference in Transmission Service, Order No. 890, 72 FR 12,266 (March 15, 2007), FERC Stats. & Regs. P 31,241 (2007), aff'd by Order No. 890-A, 121 FERC P61,297 (2007)), which have the force of a "federal regulation" once they are filed with a federal agency. *Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 839 (9th Cir. 2004), *citing Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir. 1998); *see also Evanns v. AT&T Corp.*, 229 F.3d 837, 840 & n.9 (9th Cir. 2000). The FPA delineates that preliminary enforcement of the reliability standards is tasked to NERC and FERC, and final enforcement of any citations for reliability standards violations is the exclusive domain of FERC. 16 U.S.C. § 824o(e). It is against this backdrop that the Court's subject matter jurisdiction is determined.

Federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a case "arises under" federal law for jurisdiction purposes is tested by the "well-pleaded complaint" rule: Federal courts consider only what necessarily appears in plaintiff's

statement of his or her claim, unaided by anything alleged in anticipation or avoidance of defenses the defendant may interpose. *Taylor v. Anderson* 234 U.S. 74, 75–76 (1914); *see Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.* 535 U.S. 826, 830 (2002).

Here, Plaintiffs rely on alleged violations of FERC and NERC reliability standards and orders as the basis for the alleged duty owed by SDG&E under their negligence claim (SAC, ¶ 70) and as the predicate "unlawful" conduct in support of their claim under California Business and Professions Code section 17200 *et seq.* ("UCL") (SAC, ¶ 81). In addition to specifically referencing these reliability standards and orders, Plaintiffs also refer to additional purported duties owed by SDG&E. (*See* SAC, ¶¶ 64-67, 71.) However, these alleged duties are also based on FERC and NERC standards and orders as detailed in SDG&E's Notice of Removal. (Dkt. No. 9, pp. 12-15.) Therefore, Plaintiffs' allegations regarding SDG&E's alleged culpability necessarily involves an evaluation of SDG&E's performance under FERC's mandatory standards. Moreover, Plaintiffs' SAC is based on the September 8, 2011 blackout that originated in Arizona and spread to San Diego County, Imperial County, Riverside County, and Orange County. (SAC, ¶ 1.) These claims necessarily involve "the transmission of electric energy in interstate commerce." Thus, Plaintiffs' claims arise under the FPA.

Where, as here, relief is "partially predicated on a subject matter committed exclusively to federal jurisdiction," only a federal court can adjudicate the matter and removal is proper. *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.* 159 F.3d 1209, 1213 (9th Cir. 1998). Although *Sparta* involved claims arising under the Securities Exchange Act of 1934, the Ninth Circuit looked to that case in holding that U.S. District Courts also have exclusive jurisdiction over cases arising under the FPA. *See Lockyer*, 375 F.3d at 841 ("In the case before us, as in *Sparta*, relief is 'predicated on a subject matter committed exclusively to federal jurisdiction.'") This also includes UCL claims predicated on a defendant's conduct covered by the FPA.

*See T & E Pastorinio Nursery v. Duke Energy Trading and Marketing, LLC*, 268 F.Supp.1240, 1246-47 (S.D. Cal. 2003) ("Here, although Plaintiffs' theories are posited on state law claims-i.e., violation of California Business and Professions Code § 17200-they are founded to some degree on Defendants' conduct in the ancillary services market that is governed by ISO tariff, the propriety of which must be exclusively determined by federal law."). Therefore, because Plaintiffs' claims are based on alleged violations of – and conduct governed by – FERC orders, regulations and tariffs, the Court has federal subject matter jurisdiction under the FPA.

The Court's OSC relies in part on 16 U.S.C. § 824o(i)(3), which provides that "Nothing in this section shall be construed to preempt any authority of any State to take action to ensure the safety, adequacy, and reliability of electric service within that State, as long as such action is not inconsistent with any reliability standard." However, this provision does not divest the Court of subject matter jurisdiction.[3] In fact, this "savings provision" only applies to state legislatures and rule-making authorities such as the California Public Utilities Commission and allows them to regulate retail electricity sales within a state. It does not confer jurisdiction on state courts to adjudicate claims arising under the FPA. If it did, this exception would swallow the rule granting exclusive federal jurisdiction over such claims. Such an interpretation is inconsistent with basic principles of statutory construction, which require that statutory exceptions be strictly construed. *See U.S. v. Luna*, 768 F.Supp. 705, 708 (C.D. Cal. 1991) *citing A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("statutory exceptions are to be strictly construed so as to prevent the exception from swallowing the rule.") This would also lead to an absurd result; and as noted by Plaintiffs in their response to the OSC, "[a]n interpretation of a statute that can create absurd results is to be avoided." (Dkt. No. 78, p. 10, ll. 5-7 *citing Public Citizen v.*

---

[3] It also does not save Plaintiffs' claims from preemption since there is no means to insure that court enforcement of the reliability standards would be consistent with FERC's exclusive enforcement of those standards under 16 U.S.C. §824o(e).

*United States Dep't of Justice*, 491 U.S. 440, 454 (1989).) Accordingly, 16 U.S.C. § 824o(i)(3) does not provide for concurrent state court jurisdiction over Plaintiffs' claims, which arise under the FPA.

However, even if the Court construes this exception to extend to state courts jurisdiction over matters arising under the FPA, which it should not, this provision does not divest this Court of its jurisdiction. Rather, the savings provision would merely provide for concurrent state court jurisdiction. Accordingly, this Court still has subject matter jurisdiction under 16 U.S.C. § 824p. Therefore, there is no basis for remanding this case to state court.

### B. The Court Has Subject Matter Jurisdiction Under CAFA

The Pinnacle Defendants removed this case under CAFA. Their removal (Dkt. No. 1) and recent response to the Court's OSC (Dkt. No. 83) go into great detail in establishing why this Court had, and still has, subject matter jurisdiction over this case under CAFA. Rather than repeat those arguments, SDG&E incorporates the arguments raised in those documents by this reference as if set forth fully herein. However, there are two issues regarding the Court's jurisdiction under CAFA that SDG&E would like to address.

The first issue is the respective burdens of the parties. The Pinnacle Defendants had the initial burden of establishing removal jurisdiction under CAFA. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). The Pinnacle Defendants met their burden in both their Notice of Removal and their response to the Court's OSC – there was minimal diversity at the time of removal because (1) Plaintiffs are California residents and the Pinnacle Defendants were residents of Arizona; and (2) the damages sought by Plaintiffs exceeds $5,000,000. After jurisdiction is established under CAFA, the burden shifts to the plaintiff to establish an exception to CAFA jurisdiction. *Id.* at 1021-22. However, Plaintiffs have stated that they are not seeking to utilize one of the CAFA exceptions to remand this case. (Dkt. No. 78, p. 6, ll. 1-3.) Moreover, Plaintiffs' analysis of the two CAFA exceptions – "local controversy" and "home state" – is based

on nothing more than incomplete hypotheticals and supposition. Plaintiffs do not establish the applicability of either of those exceptions. Therefore, this case was properly removed by the Pinnacle Defendants under CAFA.

The second issue is whether post-removal conduct – in this case the dismissal of the Pinnacle Defendant – affects the Court's subject matter jurisdiction under CAFA. The answer to this is unequivocally no. As Judge Burns recently held, "if the Court has jurisdiction under CAFA when [the] case is removed," it retains that jurisdiction despite the subsequent dismissal of the diverse defendants. *Waller v. Hewlett-Packard Co*,. 2012 WL 1987397, *1 (S.D. Cal. 2012) *citing Cleary v. Philip Morris Inc*., 656 F.3d 511, 515 (7th Cir. 2011); *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131.32 (9th Cir. 2002). In fact, the Ninth Circuit specifically held that post-removal conduct – in that case the denial of class certification – does not divest a District Court of jurisdiction. *Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Service Workers Intern. Union v. Shell Oil Co*., 602 F.3d 1087, 1091-92 (9th Cir. 2010). Specifically, the court noted that "the idea that a putative class action, once properly removed, stays removed, 'vindicates the general principle that jurisdiction once properly invoked is not lost by developments after a suit is filed, such as a change in the state of which a party is a citizen that destroys diversity.'" *Id*. at 1091 *quoting Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010).

Plaintiffs agree with this general rule. (Dkt. No. 78, p. 13, ll. 6-20.) However, they then go on to cite a number of out-of-district cases which they claim might impact the Court's analysis. But all of these cases are distinguishable. *Doleac v. Michalson*, 264 F.3d 470 (5th Cir. 2001), *Sharp v. Kmart Corp*., 991 F.Supp. 519 (M.D. La. 1998), and *Perez v. Arcobaleno Pasta Machs*., 261 F.Supp.2d 997 (N.D. Ill. 2003) did not deal with CAFA. Further, *Kaufman v. Allstate Inc. Co*., 561 F.3d 144 (3rd Cir. 2009) did not deal with a determination of whether removal was proper in the first instance. Rather, *Kaufman* dealt with the application of the "local controversy" exception to CAFA jurisdiction. The *Kaufman* court acknowledged this in distinguishing the

situation from the general rule applicable in this case – "Applying the [local controversy] exception when no local defendant remains in the action, as could occur under the time-of-filing rule, would not comport with the exception's focus on discerning local controversies based, in part, on the presence of a significant local defendant." *Id*. at 153.  Finally, *Schillinger v. Union Pac. RR. Co*., 425 F.3d 330 (7th Cir. 2005) dealt with whether or not the amended complaint constituted the "commencement" of a new action such that the case, initially filed prior to CAFA's effective date, could then be removed under CAFA.  Thus, the language from *Schillenger* quoted in Plaintiffs' response is dicta, and nothing more.

Therefore, this Court has subject matter jurisdiction over this case under CAFA.

### III. CONCLUSION

For each of the foregoing reasons, and for those set forth in SDG&E's Notice of Removal and the Pinnacle Defendants' Notice of Removal and response to the OSC, the Court should not remand this case to state court.

Dated: September 16, 2013        PEREZ & WILSON LLP

By: /s/   Michael J. Pérez
Michael J. Pérez
Attorneys for Defendant
SAN DIEGO GAS & ELECTRIC COMPANY